UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JENNIE KIRKLAND,

       Plaintiff,     **REPORT AND**
                **RECOMMENDATION**
 - against -
                06 CV 331 (NG)
CITY OF NEW YORK, et al.,

       Defendants.
-----------------------------------------------------------------X

On January 26, 2006, plaintiff Jennie Kirkland filed this action pursuant to 42 U.S.C §

1983, alleging that her constitutional rights had been violated by the City of New York ("City"),

the New York City Police Department ("NYPD"), Commissioner Raymond Kelly and several

unidentified NYPD officers during the entry and search of plaintiff's apartment on September 28,

2005. By Notice of Motion dated August 11, 2006, plaintiff seeks leave pursuant to Rule 15 of

the Federal Rules of Civil Procedure to amend her complaint to name as defendants fifteen

recently identified officers or supervisors of the NYPD, to add the confidential informant ("CI")

whose information led to the issuance of the search warrant in this case as a named defendant, to

add additional factual assertions to the Complaint, and to add a cause of action for conspiracy.

Defendants object to the proposed amendments on the grounds that the CI is subject to

the informer's and law enforcement privileges and cannot be sued and because there is no viable

claim asserted against any of the officers, who are, in any event, entitled to qualified immunity.

(Defs.' Mem.[1] at 2). For the reasons set forth below, the Court respectfully recommends that

---

[1]Citations to "Defs.' Mem." refer to the defendants' Memorandum of Law in Opposition
to Plaintiff's Motion for Leave to Amend the Complaint.

plaintiff's motion to amend to add Officer Cowan, Officer Wood, Captain Inzirillo, Lieutenant Bergin, and Sergeant Lam be granted; that plaintiff's motion to add the remaining ten NYPD officers and the CI be denied; and that plaintiff's motion to add certain factual assertions as well as a claim of conspiracy be granted.

## FACTUAL BACKGROUND

Plaintiff, who is eighty-six (86) years old, filed this action on January 26, 2006, challenging the legality of the police entry and search of her apartment at 2202 Linden Boulevard, Apartment 3C, in Brooklyn, New York. (Compl.[2] ¶¶ 19, 38). The search was conducted on September 28, 2005, pursuant to a warrant obtained by Officer Brian Wood of the Special Narcotics Unit. (See Am. Compl.[3] ¶¶ 75-78; see also Defs.' Mem. at 3). Probable cause for the warrant that authorized a search of Apartment 3C was based on two controlled buys of narcotics made by the CI. (See Am. Compl. ¶¶ 68-72, 75-76; see also Defs.' Mem. at 3).

According to defendants, Officer Wood shadowed the CI to the hallway adjacent to plaintiff's apartment on one occasion. (See Am. Compl. ¶¶ 66-68; see also Defs.' Mem. at 3). The CI then made a purchase of narcotics from an individual in Apartment 3C and marked the door of the apartment with a check mark. (Defs.' Mem. at 3). A second controlled purchase of narcotics by the CI was made at a later date under the supervision of Officer David Cowan. (See Am. Compl. ¶¶ 70-72; see also Defs.' Mem. at 3). According to defendants, the CI again purchased drugs from a black 20-year-old male in Apartment 3C, once again marking the door of

_____

[2]Citations to "Compl." refer to the Complaint filed on January 26, 2006.

[3]Citations to "Am. Compl." refer to the Proposed Amended Complaint, submitted as Exhibit 1 to the Declaration of Colleen Meenan, Esq. ("Meenan Decl."), dated August 11, 2006.

the apartment after the purchase. (See Am. Compl. ¶ 72; see also Meenan Decl., Ex. 2 at 3; Defs.' Mem. at 3). Based on a computer search, the officers identified the apartment as registered to plaintiff and thereafter obtained a "no-knock" search warrant from the Honorable Laura Ward, Justice of the Criminal Court of the City of New York. (See Am. Compl. ¶ 74; see also Defs.' Mem. at 2-3; Meenan Decl., Ex. 4). In issuing the warrant, Justice Ward noted that the "information [had] been supplied by a known reliable confidential informant." (Meenan Decl., Ex. 4; see also Am. Compl. ¶ 74).

## DISCUSSION

### A. Standards

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that an amendment as of right may be made at any time prior to the service of a responsive pleading. Once a response to a complaint has been filed, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). After a response has been filed, the Rule provides that "leave shall be freely given when justice so requires." Id. This directive has been liberally construed. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000), cert. denied, 531 U.S. 1035 (2000). As the court in Chapman v. YMCA of Greater Buffalo noted, "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." 161 F.R.D. 21, 24 (W.D.N.Y. 1995).

Where, as here, a party seeks to amend the Complaint to add an additional defendant, Rule 21 of the Federal Rules of Civil Procedure governs. See Klecher v. Metropolitan Life Ins.

Co., 331 F. Supp. 2d 279, 283 (S.D.N.Y. 2004) (citing Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 CV 7909, 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001)). Like Rule 15(a), Rule 21 requires leave of the Court before an amendment adding a party may be made. See Fed. R. Civ. P. 21. In deciding if joinder is appropriate, the Court looks to the same liberal standard as that afforded to Rule 15 motions to amend. See Klecher v. Metropolitan Life Ins. Co., 331 F. Supp. 2d at 283. The procedural distinction between the two Rules in such matters is "merely a technical one, as Rule 15's standards guide the courts. . . ." Id.

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the decision of whether or not to grant a plaintiff's motion to file an amended pleading remains within the court's discretion. See Foman v. Davis, 371 U.S. at 182-83; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); In re Agent Orange, 220 F.R.D. 22, 24 (E.D.N.Y. 2004). Amendment may be denied for a variety of reasons, "including undue delay, bad faith, undue prejudice to the opposing party, . . . futility," or where the amendment is "'unlikely to be productive.'" In re Agent Orange, 220 F.R.D. at 24 (citing cases and quoting Ruffalo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Communications, Inc. v. Herrick Co. Inc., 360 F.3d 329, 345 (2d Cir. 2004); Zahra v. Town of Southold, 48 F.3d at 685; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989).

To determine if a party would be unduly prejudiced by permitting an amendment, courts analyze if "the amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the

dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." In re Agent Orange, 220 F.R.D. at 25 (quoting Block v. First Blood Assocs., 988 F.2d at 350). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)).

Despite the liberal standard for permitting amendment, when the amended portion of a complaint would be futile because it fails to state a claim, a court may deny the requested amendment. See Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000); see also Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23-24. When a proposed amendment is objected to on the ground of legal insufficiency, the court should assess whether the proposed amendment states a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Dougherty v. Town of North Hempstead Bd of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (noting that an amendment to a pleading will be futile "if a proposed claim could not withstand a motion to dismiss pursuant to rule 12(b)(6)"); see also Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23. Thus, this Court must accept all well-pleaded allegations in the complaint as true, and construe the complaint liberally in the light most favorable to the plaintiff. See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836 (1994); 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. 2004). The court should deny leave to amend only if it is beyond doubt that there is no set of facts that, if proved, would constitute a valid and sufficient claim as amended. See Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991); see also Pierre v. JC Penny Co., Inc., No. 03 CV 4782, 2006 WL 407553, *2-3 (E.D.N.Y. Feb. 21, 2006) (noting that

this standard should be "applied with particular strictness" when plaintiff seeks to file an amended complaint with claims of civil rights violations); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23 (citations omitted).

## B. The Proposed Amendment

In her initial Complaint, plaintiff alleges that the NYPD officers unlawfully entered and searched her home, detained her, and damaged her apartment, all in violation of her constitutional rights. (See Compl. ¶¶ 25-29, 33-35). She further alleges that these actions were taken pursuant to illegal policies and practices of the NYPD. (Id. ¶¶ 35-38).

Plaintiff seeks to amend her existing Complaint to name fifteen officers, and add additional facts alleging that the NYPD officers engaged in a joint, concerted effort with each other and the CI to obtain a search warrant for plaintiff's apartment based on misrepresentations and\or on evidence that was less than credible, and insufficient to support a finding of probable cause. (See Am. Compl. ¶¶ 86-91; see also Pl.'s Mem.[4] at 3). Specifically, plaintiff asserts that there is sworn testimony from plaintiff and her daughter that narcotics were not being sold from her apartment, but rather were being sold from Apartment 3B. (See Am. Compl. ¶¶ 4-7; see also Pl.'s Mem. at 4). Moreover, plaintiff complains that the police failed to present the CI before Justice Ward, which plaintiff asserts made it impossible for the judge to conduct an independent assessment of the CI's credibility and reliability. (See Am. Compl. ¶¶ 75-77; see also Pl.'s Mem. at 4). Plaintiff also complains that because Officer Wood was not present for the second controlled buy, the warrant was based on hearsay statements from another officer who did not

---

[4]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of Her Motion for Leave to Amend, dated August 11, 2006.

verify for Justice Ward the facts as presented in the warrant application. (See Am. Compl. ¶¶ 75-77; see also Pl.'s Mem. at 4). Finally, plaintiff complains that although the NYPD knew that plaintiff resided in Apartment 3C, the officers made no effort to verify the CI's claim that a 20 year-old black male was in that apartment, nor did they inform Justice Ward of plaintiff's advanced age. (See Am. Compl. ¶ 78; see also Pl.'s Mem. at 4-5).

1) The Individual Officers

Plaintiff seeks to add 15 officers as named defendants, asserting in general terms that all of the defendants relied on false or unreliable information, did not engage in appropriate investigative practices, wrongfully gained entrance, and unlawfully searched plaintiff's apartment in violation of her constitutional rights. (See Am. Compl. ¶¶ 50-53). In addition to these generalized claims, the Proposed Amended Complaint details somewhat more specific allegations against certain individual officers and their supervisors. Plaintiff alleges that Captain Paul Inzirillo received departmental approval to obtain the warrant to search plaintiff's apartment based on a written memorandum in which he misrepresented the facts underlying the purported buys by the CI. (See Am. Compl. ¶¶ 64-74). The Proposed Amended Complaint appears to allege that Captain Inzirillo lied in claiming that a police officer "ghosted" the CI during his or her purchase of drugs from plaintiff's apartment. (See id. ¶ 91).

In the Proposed Amended Complaint, plaintiff also seeks to impose liability on Officer Wood and his supervisor, Lieutenant Bergin, and on Officer Cowan and his supervisor, Sergeant Lam, based on their role in supervising the undercover buys by the CI. (Id. ¶¶ 74, 86-94). The Proposed Amended Complaint alleges that the officers lied about the purchases of narcotics from

Apartment 3C, and failed to provide the Criminal Court judge with all of the pertinent information necessary for the judge to adequately assess probable cause. (Id. ¶¶ 91-94). As to the remaining NYPD officers who plaintiff seeks to add as named defendants, there are no specific allegations in the Proposed Amended Complaint describing their conduct or their role in the investigation.[5] The only claims relating to Captain Muscatello, Sergeant Ernie Borelli, Detective Christopher Fleming, Officer Christopher Ward, Officer Ramer, Officer Thomas, Detective Federici, Detective Marinakos, Officer Dauge and Officer Cusumano[6] are the generalized description of their respective positions, in some instances, and the vague assertion that they violated plaintiffs' rights. (See id. ¶¶ 15-29). However, it is unclear from the Complaint and from plaintiff's moving papers what role these other officers allegedly played in violating plaintiff's rights.

In urging the Court to deny plaintiff's motion to add these officers, defendants raise several arguments. First, they contend that the amendments should be denied as futile because the existence of a validly issued search warrant creates a presumption of probable cause. (Defs.' Mem. at 12 (citing Rincon v. City of N.Y., No. 03 CV 8276, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005)). A valid warrant issued by a neutral magistrate does suffice to create a presumption of probable cause, and a plaintiff who seeks to argue that a warrant was issued on less than probable cause faces a heavy burden. See, e.g., Illinois v. Gates, 462 U.S. 213 (1983);

---

[5]Plaintiff achieves greater clarity in her Memorandum of Law by asserting that the officers directly violated plaintiff's rights, or were grossly negligent in supervising others, or failed to remedy a violation after learning of it through a report, or created a custom or policy allowing the violation. (See Pl.'s Mem. at 10). Even here, however, plaintiff fails to articulate specific claims against the remaining ten officers. (See id.)

[6]For a number of these officers, plaintiff fails to specify their first names.

Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (citing cases), cert. denied, 505 U.S. 1221 (1992). Here, plaintiff's claim appears to be based on the theory that the information provided to the judge was false, misleading and incomplete. (See Am. Compl. ¶¶ 78-79, 89-94). Affidavits supporting search warrants have a presumption of validity, although in certain circumstances they may be challenged. See United States v. Martin, 426 F.3d 68, 73 (2d Cir. 2005), cert. denied, 126 S. Ct. 1861 (2005).

To establish that the information provided to the neutral magistrate was false, plaintiff must show that: 1) the affiant knowingly and deliberately or with reckless disregard for the truth, made false statements or omitted material facts from the warrant applicant; and 2) those statements or omissions were crucial to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (establishing this standard with respect to suppression hearings in criminal proceedings); see also United States v. Martin, 426 F.3d at 73 (applying Franks standard to suppression hearing); Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994) (applying Franks standard to the challenge of a search warrant in a Section 1983 case); Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990) (applying Franks standard to issues of qualified immunity in a civil rights action). Where, as here, plaintiff has alleged that there is "intentional or reckless omissions of material information," such as false statements, a Franks challenge may be mounted. Golino v. City of New Haven, 950 F.2d at 871. In cases where the information was "critical to the probable cause determination," recklessness may be inferred. Id. (citing cases).

False statements are "material" when they are "'necessary to the [issuing] judge's probable cause finding.'" United States v. Martin, 426 F.3d at 73 (quoting United States v. Awadallah, 349 F.3d 42, 64-65 (2d Cir. 2003)). The Second Circuit instructs that a false

9

statement is "necessary" to the issuing judge's probable cause finding if, after disregarding the allegedly false statements, the court determines that "the remaining portions of the affidavit would [not] support probable cause to issue the warrant." Id. (citing cases). Therefore, "the ultimate inquiry is whether, after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" Id. at 74 (quoting United States v. Trzaska, 111 F.3d 1019, 1027-28 (2d Cir. 1997)). The standard for determining probable cause is "not overly strict," and judges must make a "'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her that] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 74 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). However, "unsupported conclusory allegations of falsehood or material omission cannot support a Franks challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof." Velardi v. Walsh, 40 F.3d at 573.

Here, plaintiff has made general allegations that the officers lied to the judge or omitted to tell the judge certain facts. (See Am. Compl. ¶¶ 88-97). However, she has failed to specify what false statements were made to the judge except to suggest that the officers and the CI listed the wrong apartment in which the sale occurred. (See id.) Moreover, other than denying that drugs were sold from her apartment or that any black 20-year-old males had access to her apartment, plaintiff sets forth no additional factual allegations to support her claim that the affiant of the warrant, Officer Wood, "knowingly and deliberately," or even recklessly, made false statements to the Criminal Court judge at the time of the issuance of the warrant.

As for the alleged omissions of fact from the warrant application, plaintiff merely asserts

10

that the officers failed to apprise the judge of other narcotics activity in the building or of the age of the plaintiff. (Pl.'s Mem. at 4-5). However, plaintiff has failed to explain why these facts are material to the issue of probable cause or why, if known to the judge, these facts would have changed the outcome. Certainly, based on the judge's finding as to the reliability of the CI and given the details surrounding the two purchases[7] of narcotics, there was ample basis for the judge to find probable cause to support the warrant. (See Meenan Decl., Ex. 4).

Finally, plaintiff alleges that the officers failed to produce the CI for examination by Justice Ward. (Pl's Mem. at 4). However, there is no legal requirement under either New York or Federal law that a confidential informant personally present sworn testimony before a warrant may issue. The Supreme Court requires judges to evaluate probable cause under a "totality of the circumstances" test by analyzing the informant's veracity, reliability, and the basis of his or her knowledge. See Illinois v. Gates, 462 U.S. 213, 230 (1983). New York law dictates the use of the two-pronged "Aguilar-Spinelli" analysis regarding an informant's reliability and the basis of his or her knowledge. See People v. Griminger, 71 N.Y.2d 635, 637, 524 N.E.2d 409, 410 (1988). Under either standard, the judge was not required to interview the CI in person. The affidavit provided evidence that the CI had a history of veracity through prior buys, and the claim that there were drugs likely to be found in the apartment was based on the CI's personal knowledge obtained through the actual drug purchases from this apartment. (See Meenan Decl.,

---

[7] Plaintiff asserts that the warrant was improper in part because Officer Woods' knowledge of the second controlled buy was based on hearsay. (Pl.'s Mem. at 4). Hearsay is, however, permissible in an affidavit to support a finding of probable cause for a search warrant. See Jones v. United States, 362 U.S. 257 (1960), overruled on other grounds, United States v. Salvucci, 448 U.S. 83 (1980); see also United States v. Ramirez, 279 F.2d 712, 715 (2d Cir.), cert. denied, 364 U.S. 850 (1960); United States v. Laufer, 245 F. Supp. 2d 503, 507 (W.D.N.Y. 2003) (citing Illinois v. Gates, 462 U.S. at 243-46).

11

Ex. 2). Together, these factors are more than adequate to satisfy the standards set by either Federal or New York law. Moreover, there is nothing to suggest that Justice Ward requested to speak to the CI and was denied that opportunity. (See Meenan Decl., Ex. 4).

At this point, the only material issue of fact as alleged in the Proposed Amended Complaint is whether the CI lied to the officers or whether the officers lied to Justice Ward as to which apartment was involved. Defendants argue that other than plaintiff's own testimony that there was no black male of 20 years of age who had access to her apartment, the allegations that the CI and the officers lied are based merely on conjecture. (See Am. Compl. ¶¶ 89-91; see also Pl.'s Mem. at 4). While there does not appear to be any additional evidence alleged to support this claim, given that this issue arises prior to the completion of discovery, in the context of a motion to amend and not a motion for summary judgment, the Court declines to recommend that plaintiff's motion be denied at this time.

However, the Court agrees with defendants' contention that to the extent that plaintiff is allowed to amend to add any of the police officers, she should only be authorized to name those officers who played a specific role in the alleged constitutional violation. Defendants argue that only Officers Brian Wood and David Cowan, the officers who directed the controlled buys, should be individually named in the action. (Defs.' Mem. at 15). Defendants additionally assert that the other officers acted on the basis of a facially valid warrant, as they are entitled to do without a requirement of personal knowledge. (Id.) The Court agrees, but also finds that there are sufficient allegations to name Officer Cowan's and Officer Wood's supervisors, along with Captain Inzirillo. In describing Officer Wood's and Officer Cowan's roles in directing the undercover buys, along with Captain Inzirillo, Lieutenant Bergin, and Sergeant Lam, in preparing

and presenting the search warrant, the allegations in the Proposed Amended Complaint are sufficient to state a claim against these officers if plaintiff can establish that they conspired with the CI to present false evidence to the court. (See Am. Compl. ¶¶ 64-74, 88-89). However, there are no allegations that any of the remaining officers committed specified acts of misconduct in the course of entering the plaintiff's apartment or in conducting the ensuing search. To the extent that plaintiff claims that damage occurred in the entry process, or that she was wrongfully detained, she does not specify which, if any, of the named officers participated in the entry or in the detention. It is also unclear from the Proposed Amended Complaint whether the named officers, with the exception of Officers Wood and Cowan, Lieutenant Bergin, Sergeant Lam and Captain Inzirello, are named as defendants because they participated in the search or because they are alleged to have been supervisory officers or policymakers.

Moreover, even if plaintiff could specifically identify the officers who actually participated in conducting the search, to claim a violation of Section 1983 based on damage that occurs during entry, there must be an allegation that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant occurred. See, e.g., Dalia v. United States, 441 U.S. 238, 258 (1979); Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995); Bartlett v. City of New York, No. 03 CV 1961, 2005 WL 887112, at *7 (E.D.N.Y. Feb. 11, 2005). The extent of the damage that plaintiff claims occurred during the search is limited to damage to an antique table, the front door, door frame, and the wall near the door. (See Am. Compl. ¶¶ 40, 42). Plaintiff has failed to allege that such damage is anything more than ordinary disarray incident to the execution of the warrant, or that the officers' actions were malicious or unreasonable, given their reliance upon a valid search warrant. Plaintiff has

therefore failed to allege the elements necessary to claim a Section 1983 violation by these officers in connection with the conduct that occurred during the execution of the search warrant.

Defendants also argue that they are entitled to qualified immunity. Where defendants raise this defense, courts "should resolve that threshold question before permitting discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1988) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)); see also Osborne v. Haley, 127 S. Ct. 881, 886-87 (2007) (noting that " the Court has several times instructed" that "[i]mmunity related issues . . . should be decided at the earliest opportunity"); Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (stating that "qualified immunity is an immunity from judgment - [therefore] assertions of qualified immunity should be addressed as early as possible"). The resolution of this question is reached by determining whether, "assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." Crawford-El v. Britton, 523 U.S. at 598; see also McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997). A clearly established law or right is one that is "'sufficiently clear that a reasonable official would understand that what he [or she] is doing violates [it.]'" McEvoy v. Spencer, 124 F.3d at 97 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Alternately, courts may demand more specific allegations of intent by the plaintiff. See Crawford-El v. Britton, 523 U.S. at 598.

In this case, if plaintiff were able to prove her broad allegation that Officers Wood and Cowan lied to Justice Ward to obtain a search warrant, and that they conspired with Captain Inzirillo, Lieutenant Bergin, Sergeant Lam, and the CI to obtain the warrant through false statements, she would satisfied her burden to show that defendants "violated clearly established law." Lying to a judge to obtain a search warrant is so clearly in violation of the law that any

reasonable official would understand it as such. Accordingly, assuming the truth of plaintiff's

allegations, as it must at present, see Ricciuti v. New York City Transit Authority, 941 F.2d at

123; see also Pierre v. JC Penny Co., Inc., 2006 WL 407553, at *2-3, the Court declines to find

qualified immunity for these five officers, though this defense may be raised again as the facts of

the case develop.

Although the evidence in support of plaintiff's claim that the officers presented false

statements to the judge is slim, the Court, recognizing the liberal standards that apply in the

context of a motion to amend, respectfully recommends that plaintiff's motion to amend to name

Officers Wood and Cowan, and Captain Inzirillo, Lieutenant Bergin, and Sergeant Lam, be

granted. The Court further recommends that the additional factual assertions, which do not

appear to cause prejudice to defendants, be added to the Complaint as well. However, given the

lack of specificity in the Proposed Amended Complaint, the failure to allege even in general

terms what role was played by the remaining ten NYPD officers in committing violations of

plaintiff's rights, and the existence of a facially valid warrant supported by probable cause, the

addition of these ten defendants would be futile. Accordingly, the Court respectfully

recommends that plaintiff's motion to add these other officers be denied without prejudice.


2) The Confidential Informant

Plaintiff also seeks to amend the Complaint to name the confidential informant as a

defendant. (Am. Compl. ¶ 30). Plaintiff contends that the CI is a "state actor" for purposes of

demonstrating liability under Section 1983 because the CI jointly engaged with the NYPD

officers in violating plaintiff's rights. (Pl.'s Mem. at 7). Plaintiff alleges that the CI and the

officers had a "meeting of the minds" as to the purchase of drugs, payment to the CI, and the procurement of a search warrant to enter plaintiff's apartment. (Am. Compl. ¶ 88). Plaintiff also takes the position that the CI's actions subject the City of New York to liability under the state law doctrine of respondeat superior. (Pl.'s Mem. at 8). Plaintiff asserts that because the CI was registered with the NYPD and was paid for his or her participation, the City may be held responsible for the CI's actions. (Id.) Finally, plaintiff argues that the informer's privilege may be protected by identifying the informant through the use of a pseudonym.[8] (Id. at 6).

Defendants oppose the addition of the CI as a named defendant for several reasons. First, defendants contend that there are no facts alleged, and no reason to believe, that the CI provided false information, or that the CI's testimony is needed to determine whether the officers' conduct was reasonable in seeking the warrant, and that in any event, the CI's identity is protected by the informer's privilege. (Defs.' Mem. at 8-9).

Moreover, in determining whether the City should be held liable for the CI's actions under a theory of respondeat superior, defendants contend that the CI is not an employee of the City, but rather that his or her interaction with the NYPD, which was "short-term and sporadic," was more in the nature of an independent contractor. (Id. at 10-11 (citing cases)). Defendants argue that in the absence of an employment relationship, there is no basis for a claim for respondeat superior. (Defs.' Mem. at 11).

The Court need not determine whether the CI is an independent contractor because there

---

[8] In an earlier Order, dated May 5, 2006, this Court granted defendants' request for a confidentiality order allowing defendants to withhold the identity of the CI in order to protect the security of the CI and to further the public policy interests in encouraging informants and civilians to cooperate with law enforcement in combating crime.

are other overriding concerns that militate against naming him or her as a defendant in this action. As this Court noted in its May 5, 2006 discovery order ("Order") granting defendants' request to redact certain information from documents relating to the CI, the government may "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1956) (citing cases). The purpose of this "informer's privilege" is "the furtherance and protection of the public interest in effective law enforcement. [It] recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Id. The law is clear that the privilege protects the informant's identity, but does not prevent disclosure of the substance of the informant's communication. See Brock v. Panzarino, 109 F.R.D. 157 (E.D.N.Y. 1986). Indeed, this Court ordered production of various documents that contained the contents of the CI's statements but not the CI's identity, consistent with the notion that "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." Roviaro v. United States, 353 U.S. at 60; see also Carbajal v. Village of Hempstead, No. 02 CV 4270, 2003 WL 23138447, at *2 (E.D.N.Y. Dec. 22, 2003).

In certain circumstances, where "the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. at 60-61. In making that determination, the Court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense," id. at 62, with the emphasis in a civil case on "whether disclosure is essential to the fair determination of a party's cause." Holman v.

Cayce, 873 F.2d 944, 946 (6th Cir. 1989); see also In re United States, 565 F.2d 19, 22-23 (2d Cir. 1977) (finding that the "doctrine of informer privilege is applied in civil cases as well as criminal . . . ." and that where the identification of an informant is "essential to a fair determination of the issues in the case," it may not be invoked), cert. denied, 436 U.S. 962 (1978). The party seeking disclosure of the informant's identity has the burden of establishing that "the information sought is both relevant and essential to the presentation of his case on the merits, and that the need for disclosure outweighs the need for secrecy." Cullen v. Margiotta, 811 F.2d 698, 715-16 (2d Cir. 1987) (citations omitted), cert. denied, 483 U.S. 1021 (1987), overruled on other grounds, Agency Holding Corp. v. Malley, Duff & Associates, Inc., 483 U.S. 143 (1987); see also United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) (party seeking disclosure bears the burden of showing that the informant's testimony is material to the prosecution of the case), cert. denied, 489 U.S. 1089 (1990).

As addressed in this Court's prior Order, plaintiff's argument that the informant is a "state actor," who is thus a proper individual to be joined in this action, has been previously rejected as insufficient to overcome the government's interest in fostering and encouraging cooperation with law enforcement. See Black v. Sheraton, 564 F.2d 550, 555 (D.C. Cir. 1977) (finding a party's interest in pursuing an informant in his or her individual capacity for punitive purposes as "minimal," and outweighed by the government's interest in encouraging citizens to cooperate with government in law enforcement efforts); see also In the Matter of the Search of the Premises Known as 1182 Nassau Averill Park Road, 203 F. Supp. 2d 139, 141 (N.D.N.Y. 2002) (denying request for affidavit in support of search warrant on the basis that the information therein was peripheral, and outweighed by the risk of retaliation against a confidential

18

informant).

Moreover, as noted in the Court's prior Order, the City raised a legitimate concern that revealing the identity of the CI could pose a danger to the CI's safety. (Order at 9 n.7). Although the plaintiff may not personally pose a threat to the CI, there is a risk that if the identity of the CI is revealed, the information might fall into the hands of other people who pose a danger to the informant. If, as plaintiff suggests, the true traffickers live in the vicinity of plaintiff's apartment, they may threaten plaintiff to obtain information as to the identity of the CI. Moreover, if the identity of the confidential informant was revealed, individuals who were arrested in the other three cases in which the CI participated could also pose a safety risk to the informant. Balanced against these concerns is plaintiff's contention that the information sought is necessary to test probable cause, and that plaintiff personally does not pose a risk to the confidential informant.

Applying the Roviaro balancing test, the Court again finds that plaintiff has not demonstrated that her need for the identity of the CI is essential to her case, nor does that need outweigh the concerns raised as to the safety of the informant. See, e.g., United States v. Boone, No. 02 CR 1185, 2003 WL 841088, at *6 (S.D.N.Y. 2003) (denying request for identity of informant where disclosure posed risk to informant's safety, and where defendant was "only speculating that the informant had helpful information to his defense") (citing Roviaro v. United States, 353 U.S. at 60-61 (1957)). Even after some preliminary discovery, plaintiff has not sufficiently alleged facts showing how the identity or testimony of the CI might be used to test probable cause. See, e.g., United States v. Saltares, 301 F. Supp. 2d 305, 307 (S.D.N.Y. 2004) (denying request for identity of informant where defendant was not able to make "even a preliminary showing that the affiant knowingly, intentionally, or recklessly included a false

statement in the affidavits," and where government had strong interest in protecting the informant's identity). Given the potential danger that disclosure of the informant's identity may pose, the Court reaffirms its earlier ruling that disclosure of the informant's identity is not warranted at this time.

Defendants also dispute plaintiff's suggestion that the use of a pseudonym to protect the safety of the CI is appropriate in this case. (Defs.' Mem. at 11). The cases cited by plaintiff that find the use of a pseudonym to be appropriate are uniformly cases in which the courts, concerned about the privacy of plaintiffs, have allowed them to pursue their claims under a pseudonym. See, e.g., E.W. v. N.Y. Blood Center, 213 F.R.D. 108 (E.D.N.Y. 2003); Roe v. Wade, 410 U.S. 113 (1973); Doe v. Bolton, 410 U.S. 179 (1973); Doe v. Blue Cross & Blue Shield, 794 F. Supp. 72, 73 (D.R.I. 1992). Overcoming the explicit requirement of disclosure set forth in Fed. R. Civ. P. 10(a) is only permitted in exceptional cases. See Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (outlining the test for weighing when plaintiffs have overcome the heavy burden to proceed under a pseudonym); see also Keenan v. Town of Gates, 414 F. Supp. 2d 295, 297 (W.D.N.Y. 2006) (noting that the exceptions to the requirement of disclosure of a party's identity are "narrow and few"); Rankin v. New York Public Library, No. 98 CV 4821, 1999 WL 1084224, at *1 (S.D.N.Y. Dec. 2, 1999) (plaintiffs are allowed to proceed anonymously "only in unusual or exceptional cases").

None of these cases involved a defendant, much less a confidential informant, sued as a defendant in a Section 1983 action. In the rare cases discussing the use of pseudonyms for defendants, it is similarly clear that such a practice is "not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) (citing Wiltsie v. California Dep't of Corrections, 406 F.2d 515,

518 (9th Cir. 1968)); see also Feliciano v. County of Suffolk, 419 F. Supp. 2d 302, 313

(E.D.N.Y. 2005) (same). Use of pseudonyms has at times, however, been permitted where

discovery will identify the unknown defendants. Gillespie v. Civiletti, 629 F.2d at 642

(permitting a plaintiff to amend his complaint to add defendants with pseudonyms for particular

corrections officers until responses to interrogatories in initial discovery would provide the

missing names of these defendants). However, use of a pseudonym should not be permitted

"where it is clear that discovery would not uncover the identities [of unknown defendants] . . . ."

Id.; See also Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997) (stating the general rule that

one who cannot identify a tortfeasor cannot bring suit, but allowing an incarcerated pro se

plaintiff to attempt to determine the identity of defendants through initial discovery due to the

limited investigative tools at his disposal); Mitchell v. Administrator and Director of the

Assigned Counsel Plan of the City of New York, No. 05 CV 2760, 2005 WL 1572158, at *2

(S.D.N.Y. July 1, 2005) (regarding Valentin as addressing a trial court's obligation to assist pro

se plaintiffs in identifying a specific, named defendant so that party can be served); Murphy v.

Goord, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006) (permitting plaintiff to use a pseudonym for

unknown defendants while plaintiff proceeded with discovery to identify the defendants

involved, and stating that plaintiff may then properly be granted leave to amend once the

defendants identities have been uncovered through discovery); Covington v. Warden of C-95,

No. 93 CV 1958, 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996) (stating that while plaintiff may

temporarily identify defendants with pseudonyms, he must substitute named parties for them

before the statute of limitations runs); Davis v. Kelly, 160 F.3d 917, 922 (2d Cir. 1998) (holding

that a pro se plaintiff with a colorable claim against unnamed supervisory personnel should not

have his claim dismissed without an opportunity for additional discovery).

Here the identity of the CI will not be made available during discovery because this Court has already determined that revealing the CI's identity would pose a risk to his or her security. The present case is therefore very different from those in which plaintiffs seek to proceed under a pseudonym to protect themselves from stigma or fear. It is likewise distinguishable from cases of unknown defendants who are in the process of being identified, and who would subsequently be named in place of the pseudonyms. Plaintiff's proposal to instead create a permanent pseudonym for the CI in this litigation is unsupported by precedent.

Moreover, there are practical issues that prevent proceeding against the CI under a pseudonym. The Corporation Counsel's Office has indicated that it cannot represent the CI. See N.Y. Gen. Mun. L. § 50-k(1)(e), § 50-k(2) (providing for defense of an "employee . . . acting within the scope of his public employment" and expressly excluding independent contractors). Thus, the CI will have to obtain his or her own counsel. In addition, since Corporation Counsel will not represent the CI, and therefore cannot accept service on his or her behalf, it is unclear how the plaintiff proposes to serve the CI with process if the CI is named using a pseudonym, or how the CI could meaningfully participate in the discovery and trial process without revealing his or her identity or jeopardizing his or her safety.

For all of these reasons, the Court concludes that the need to protect the identity and safety of the informant, including the important public policy concerns behind the informer's privilege, far outweigh the need of the plaintiff to have the CI participate as a defendant in the case. Since the CI's identity is protected by the ruling of the Court, and the use of a permanent pseudonym for a confidential informant is not supported by law, amending the complaint to add

the CI would be futile. The Court additionally notes that there has been no showing as to why the CI would be necessary as a party in the action or even that information which the CI could provide at deposition would be material or critical to the case.[9]  Accordingly, the Court respectfully recommends that plaintiff's motion to amend to name the CI as a defendant be denied in its entirety.

## 3) Additional Cause of Action for Conspiracy

Finally, plaintiff seeks to amend her Complaint to add a cause of action for conspiracy, though she neglected to provide discussion or precedent to support this.  (See Am. Compl. ¶¶ 86-88; see also Pl.'s Mem. at 2).  Defendants respond that such an amendment would be futile because conclusory references without any specific factual support are inadequate to survive a motion to dismiss.  (Defs.' Mem. at 21).  Defendants further argue that plaintiff cannot state a viable conspiracy claim among the police officers because of the doctrine barring intra-enterprise conspiracy.  (Id. at 21 (citing Smith v. City of New York, 290 F. Supp. 2d 317, 320 (E.D.N.Y. 2003); Linden v. City of New York, 263 F. Supp. 2d 585, 591 (E.D.N.Y. 2003)).  Plaintiff's claim of conspiracy is broader than this, however, and encompasses an allegation of conspiracy between the police officers and the CI, who defendants have asserted is neither an agent nor an employee of the City of New York.  (See Am. Compl. ¶¶ 86-88; see also Pl.'s Mem. at 3; Defs.' Mem. at 10).

Defendants also assert that a conspiracy claim between members of the NYPD and the CI

---

[9]However, it may be possible for plaintiff, upon further showing, to provide sufficient justification to warrant conducting the deposition of the CI while maintaining his or her confidentiality.  At this point, because the only question before the Court is the motion to amend to add the CI as a party, the Court need not address that issue at this time.

would fail because plaintiff must "allege and prove" an agreement and an overt act through specific facts. (Defs.' Mem. at 21 (citing Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)). It is true that plaintiff's allegations are somewhat vague and are supported with few facts. However, given the liberal standards permitting amendment, the Court respectfully recommends that the request to add this claim, which may be bolstered by further discovery, be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 21, 2007

Cheryl L. Pollak
United States Magistrate Judge